IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| AMRESCO Commercial Finance, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV 05-41-S-LMB |
| | ) | |
| v. | ) | MEMORANDUM DECISION |
| | ) | AND ORDER |
| T.P. SAMPSON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

Currently pending before the Court is Defendants' Motion to Dismiss for Lack of

Personal and Subject Matter Jurisdiction (Docket No. 5).  Having carefully reviewed the record,

considered oral arguments, and otherwise being finally advised, the Court enters the following

Memorandum Decision and Order.

## I.

## BACKGROUND

In January 2001, Plaintiff AMRESCO Commercial Finance, LLC ("ACFI"), loaned T.P.

Sampson Company (the "Company") and John N. Sampson ("Sampson"), (collectively

"Defendants") approximately $4.9 million dollars (the "Loan") to assist Defendants in

refinancing funeral homes and related operations in Springfield, Massachusetts.  *Complaint*,[1] ¶¶

---

[1]  When ruling on a motion to dismiss for lack of personal jurisdiction, uncontroverted
allegations in the complaint must be taken as true and conflicts between parties over statements

(continued...)

MEMORANDUM DECISION AND ORDER -1-

2-4, 12 (Docket No. 1).  Sampson is the sole shareholder, officer, and director of the Company.

*Id.* at ¶ 5.  In his individual capacity and on behalf of the Company, he executed several

documents, including a Promissory Note and Pledge and Security Agreement, to obtain the Loan

from ACFI.  *Redding Affidavit*, Exs. 32-33, 40-42 (Docket No. 15).

On January 31, 2005, counsel for Defendants sent a demand letter to ACFI stating

Defendants' position that ACFI (and/or individuals acting on its behalf) made misrepresentations

constituting fraud to induce Defendants to enter into the Loan agreement.  *Moore Affidavit*, Ex.

1, p. 2 (Docket No. 14).  The letter demands that ACFI agree to allow Defendants to refinance

their debt and informs ACFI that counsel for Defendants "will not hesitate to pursue our clients'

interest in court."  *Id.*  Defendants, however, have continued performing their obligations under

the Loan agreements and are not in default on the Loan.  *Defendants' Memorandum*, p. 3

(Docket No. 6); *Sampson Affidavit*, ¶ 8 (Docket No. 7).

On February 8, 2005, Plaintiffs filed the instant action requesting this Court declare "that

the Note and the other Loan Documents continue to be valid, effective and enforceable against

the defendants in accordance with the terms of the parties' agreement."  *Complaint*, ¶ 19 (Docket

No. 1).  Defendants filed a Motion to Dismiss for lack of personal and subject matter

jurisdiction.  (Docket No. 5).  A hearing was held on June 15, 2005, at which time the Court

ordered supplemental briefing on the subject matter jurisdiction issue.  On July 5, 2005, the

---

[1](...continued)
in affidavits must be resolved in the plaintiff's favor.  *Dole Food Co. v. Watts*, 303 F.3d 1104,
1108 (9th Cir. 2000).  Accordingly, the Background section relies on facts from Plaintiffs'
Complaint and various affidavits.

MEMORANDUM DECISION AND ORDER -2-

parties submitted their final briefing.  Accordingly, the Court will now consider Defendants'
Motion to Dismiss.

## II.

## PERSONAL JURISDICTION

### A.    Defendants Have Consented to the Jurisdiction of this Court

ACFI initially argues that Defendants cannot contest the jurisdiction of this Court
because one of the Loan documents contains a clause by which Defendants consented to
jurisdiction and venue in Idaho.  Federal law governs the validity of a forum selection clause.
*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Manetti-Farrow, Inc. v.
Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988) (breach of contract case).  Under federal
law, parties to a contract may agree in advance of litigation to submit to the personal jurisdiction
of a court.[2]  *Hunt v. Wesson Foods, Inc*., 817 F.2d 75, 77 (9th Cir. 1987).

In the Pledge and Security Agreement signed by each of the Defendants, they agreed
"that any suit, action or other legal proceeding arising out of or relating to the Loans, this
Security Agreement, or the Loan Documents . . . may be brought in a court of record in the State
of Idaho or in the courts of the United States of America located in such state."  *Redding
Affidavit*, Ex. 25, ¶ 15.17 (Docket No. 15).  The Agreement further provides that Defendants
consent "to the jurisdiction of each such court in any such suit, action or proceeding."[3]  *Id.*

---

[2]  Idaho law also allows consent to jurisdiction clauses.  *Ponderosa Paint Mfg., Inc. v. Yack*, 125
Idaho 310, 314 (Ct. App. 1994).

[3]  The General Acknowledgment and Certification also contains a consent to jurisdiction in
Idaho.  *Redding Affidavit*, Ex. 10 (Docket No. 15).

MEMORANDUM DECISION AND ORDER -3-

Similar to the consent clause in *Hunt*, the clause at issue in the present action does not limit the parties to bringing suit only in Idaho, nor does it say anything about Idaho courts having "exclusive jurisdiction." *Hunt*, 817 F.2d at 77.[4]  Instead, the clause here is a permissive consent to jurisdiction of the type upheld in *Hunt*, and therefore is enforceable under federal law.[5]  Accordingly, the Court has jurisdiction over this action, which arises out of and relates to the Loans, the Pledge and Security Agreement, and the Loan Documents.

**B.      Plaintiffs Have Made the Requisite *Prima Facie* Showing of Jurisdictional Facts**

Even assuming Defendants had not expressly consented in the Loan Documents to the jurisdiction of Idaho courts, this Court is of the view that sufficient contacts in Idaho and purposeful availment exist to allow jurisdiction in Idaho courts.

**i.      Legal Standards for Exercise of Personal Jurisdiction**

AFCI, as the plaintiff, bears the burden of demonstrating that this Court has personal

---

[4]  In contrast, the clause in *Cerami-Kote, Inc. v. Energywave Corp.*, 116 Idaho 56 (1989), a case relied on by Defendants, provided that suits could be maintained *only* in Florida.  Because of this exclusivity, the Supreme Court of Idaho determined that the clause violated Idaho public policy and refused to enforce it.  *See also Ponderosa Paint*, 125 Idaho at 320 (explaining that the clause in that case was not like the one in *Cerami-Kote*, which attempted to oust other courts of jurisdiction).

[5]  The Court disagrees with Defendants' assertion that the consent clause here presents an extraordinary circumstance that justifies departing from the general rule.  *See Reply Brief*, p. 3 (Docket No. 17).  Defendants argue that because Plaintiffs "raced" to file this suit in Idaho after receiving the demand letter, the consent clause amounts to a "de facto" impermissible forum selection clause.  *Id*.  First, Defendants have offered no authority to support their argument that extraordinary circumstances can render a consent to jurisdiction clause unenforceable.  Second, such a ruling would mean that any time a party consents to jurisdiction in a particular place, and the other party chooses to file a declaratory action in that place, it would constitute an extraordinary circumstance justifying departure from the general rule that parties may consent to jurisdiction.  The Court declines to adopt such an exception in the absence of any binding authority endorsing it.

MEMORANDUM DECISION AND ORDER -4-

jurisdiction over the Defendants. *Data Disc, Inc. v. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). To evaluate whether personal jurisdiction exists, uncontroverted allegations in the Complaint are taken as true and conflicts between parties over statements in affidavits are resolved in the plaintiff's favor. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2000). Also, where, as here, the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to survive the motion to dismiss. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). In other words, if a plaintiff's proof on the jurisdictional issue is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

In order to establish the existence of personal jurisdiction in this case, ACFI must show that (1) Idaho's long-arm statute confers personal jurisdiction over the nonresident Defendants, and (2) the exercise of jurisdiction accords with federal constitutional principles of due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

### a.    Long-Arm Statute

The Supreme Court of Idaho imposes a two-part test for an Idaho court to exert jurisdiction over an out-of-state defendant. *See Smalley v. Kaiser*, 130 Idaho 909, 912 (1997). First, the act giving rise to the cause of action must fall within the scope of Idaho's long-arm statute and, second, the constitutional standards of due process must be met. *Id*.

Idaho's long arm statute grants jurisdiction to Idaho courts over causes of action which arise from "the transaction of business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to

MEMORANDUM DECISION AND ORDER -5-

accomplish, transact or enhance the business purpose or objective or any part thereof of such

person, firm, company, or association or corporation." Idaho Code § 5-514. The Supreme Court

of Idaho has analyzed this long arm statute as follows:

> I.C. § 5-514 must be liberally construed. The statute was designed
> to provide a forum for Idaho residents; (a)s such, the law is
> remedial legislation of the most fundamental nature. . . . By
> enacting the statute the legislature intended to exercise all the
> jurisdiction available to the State of Idaho under the due process
> clause of the United States Constitution.

*Intermountain Bus. Forms, Inc. v. Shepard Bus. Forms Co.*, 96 Idaho 538, 540-41 (1975)

(citations and internal quotation marks omitted). *See also Purco Fleet Servs., Inc. v. Idaho State*

*Dept. of Finance*, 140 Idaho 121, 124 (2004). Thus, the inquiry is the same under both Idaho's

long arm statute and the federal due process clause. *See Lake*, 817 F.2d at 1420 (explaining that

the Idaho and federal limits on personal jurisdiction are coextensive). When the limits on

jurisdiction are coextensive, the court "need only analyze whether the exercise of jurisdiction

comports with due process." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1194 (9th Cir. 1988).

*See also Dole*, 303 F.3d at 1110.

    **b.**    **Due Process**

To satisfy due process, "the defendant's conduct and connection with the forum State

[must be] such that he should reasonably anticipate being haled into court there." *World-Wide*

*Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Due process "does not contemplate

that a state may make binding a judgment in personam against an individual or corporate

defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 319 (1945). If the defendant's contacts are neither substantial, nor continuous and

systematic, but the cause of action arises out of or is related to the defendant's forum activities,

MEMORANDUM DECISION AND ORDER -6-

"limited" or "specific" personal jurisdiction exists.[6]  Whether a forum state may assert specific

jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in

relation to the cause of action.  *See Lake*, 817 F.2d at 1421.  Specifically, the Court may exercise

"specific jurisdiction" when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully
> avails himself of the privileges of conducting activities in the
> forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Lake*, 817 F.2d at 1421; *see also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

### ii.      Defendants Purposefully Availed Themselves

The first requirement for this Court to exercise specific jurisdiction is that the non-

resident Defendants must have purposefully availed themselves of the privileges of conducting

activities in Idaho.  Defendants argue that they have not purposefully availed themselves in

Idaho because neither Sampson nor any other representative of the Company have visited Idaho,

the Company is a Massachusetts corporation with its principal place of business in Springfield,

Massachusetts, Sampson is a Massachusetts' resident, the Loan was for properties located in

Massachusetts, a broker initiated contact with ACFI on behalf of Defendants, and it did not

---

[6]  A court may exercise either general or specific jurisdiction over a defendant.  *AT&T Co. v.
Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), *as amended* 95 F.3d 1156 (9th
Cir. 1996).  The Court concludes that the Defendants' contacts here are not sufficient to exercise
general jurisdiction and will analyze only whether the exercise of specific jurisdiction is
appropriate.

MEMORANDUM DECISION AND ORDER -7-

matter to Defendants that ACFI conducted business in Idaho because they entered into the Loan solely to obtain the interest rate offered by ACFI.

"Purposeful availment requires some kind of affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). "[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard*, 65 F.3d at 1498. Even an act done outside the forum state can suffice as a basis for jurisdiction. *Harris Rutsky Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (considering phone, fax, and mail contacts); *see also Hirsch v. Blue Cross, Blue Shield of Kansas*, 800 F.2d 1474, 1478-79 (9th Cir. 1986). However, "merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Ziegler*, 64 F.3d at 473. Rather, the Court should evaluate prior negotiations, contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

Defendants initially emphasize the fact that they did not personally initiate contacts with Idaho, but rather worked with a broker, Hudson and Hudson, who initiated contact with ACFI in Idaho. *Defendants' Memorandum*, pp. 4, 7 (Docket No. 6); *Reply Brief*, p. 3 (Docket No. 17). A careful review of the record, however, reveals numerous contacts between both the Company and ACFI's Idaho office, and Sampson and ACFI's Idaho office. First, Defendants and/or their attorneys and accountants submitted the Loan application, Loan documentation, and final Loan documents to ACFI in Boise, Idaho. *Redding Affidavit*, ¶¶ 9-21, 28, 31-57 & Exs. 1-13, 20, 23-

MEMORANDUM DECISION AND ORDER -8-

49 (Docket No. 15).  Additionally, Sampson and individuals acting on behalf of Sampson and the Company telephoned ACFI's headquarters in Boise on "numerous occasions."  *Id*. at ¶¶ 4-5; *Neser Affidavit* ¶ 6 (Docket No. 16).  Moreover, Sampson faxed required information to the Boise office, *Redding Affidavit*, ¶¶ 23, 25-27 & Exs. 15, 17-19 (Docket No. 15), and Defendants received correspondence from ACFI in Idaho, *id*. at ¶¶ 59-66 & Exs. 51-58.

Contrary to Defendants' assertions, these are not merely random and fortuitous contacts. *See Reply Brief*, p. 6 (Docket No. 17).  The contacts were designed to secure the Loan desired by Defendants.  In fact, Defendants acknowledge that their motivation in obtaining a Loan from ACFI was to benefit from the interest rate offered by ACFI.  *Defendants' Memorandum*, p. 3 (Docket No. 6); *Sampson Affidavit*, ¶ 7 (Docket No. 7).  Defendants thus sought the privilege of conducting business with a company operating its business in Idaho to obtain a financial benefit from that company.  In so doing, Defendants obligated themselves to an Idaho lender for more than 15 years.  *Opposition Memorandum*, p. 6 (Docket No. 12).  Because of this long-term relationship and the many contacts with ACFI's Idaho headquarters, Defendants should reasonably have anticipated being haled into court in Idaho.

Defendants also should have anticipated that ACFI might initiate an action in Idaho related to the Loan because the Loan documents themselves repeatedly refer to Idaho.  The Promissory Note provides that the validity, enforceability, construction, and interpretation of the Note shall be governed by the laws of the State of Idaho.  *Redding Affidavit*, Ex. 24, ¶ 13(f) (Docket No. 15).  The Pledge and Security Agreement specifies that required notices and communications be sent to ACFI in Boise, Idaho, and designates Idaho law as the governing law. *Id*. at Ex. 24, ¶¶ 15.2, 15.9.  The Subordination and Attornment Agreements list ACFI's Idaho

MEMORANDUM DECISION AND ORDER -9-

address at least three times, and the Mortgages note that ACFI's principal place of business is in Boise, Idaho.[7]  *Id.* at Exs. 26-28, 30.

As a result, Defendants should reasonably have anticipated being haled into court in Idaho to resolve disputes related to the Loan.  *Compare Burger King*, 471 U.S. at 480 (determining that the defendant "most certainly knew that he was affiliating himself with an enterprise based primarily in Florida" because "[t]he contract documents themselves emphasize that [Plaintiff's] operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami").  Significantly, making the forum state's law the governing law under the contract reinforces the reasonable foreseeability of possible litigation in the forum.  *Burger King*, 471 U.S. at 481-82.  *See also Decker Coal*, 805 F.2d at 840; *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (finding "purposeful availment" where the defendant solicited a distributorship agreement in the forum state and the agreement specifically designated the forum law to govern it).  Thus, the Loan documents containing choice of law provisions designating Idaho clearly anticipate that Idaho may be an appropriate forum to resolve disputes arising from the Loan.

In summary, Defendants reached out to obtain a loan from a lender with its principal place of business in Idaho, communicated with the lender in Idaho on numerous occasions to apply for, document, and finalize the Loan, entered a long term relationship with the Idaho

---

[7]  These documents also designate Idaho law to apply to all disputes except those related to the creation, priority, and enforceability of liens or security interests, in which case the law of the state in which the property is located applies.  *Redding Affidavit*, Exs. 28 & 30 at ¶ 3.06 (Docket No. 15).

MEMORANDUM DECISION AND ORDER -10-

lender, agreed to allow Idaho law to govern disputes arising from the Loan, and, with regard to some documents, consented to the jurisdiction of Idaho courts.  For all these reasons, the Court concludes that Plaintiffs have made the requisite *prima facie* showing of purposeful availment.

### iii.    ACFI's Claims Arise Out of Defendants' Contacts

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment be the ones that give rise to the current suit.  In other words, "the claim must be one which arises out of or results from the defendant's forum-related activities."  *Decker Coal*, 805 F.2d at 839.  Here, the claim for declaratory relief is directly related to the Loan secured by Defendants' activities in Idaho.  Plaintiffs seek a declaration that the Loan is enforceable.  Accordingly, the claim arises out of Defendants' forum-related activities.

### iv.    The Exercise of Jurisdiction is Reasonable

The final requirement for specific jurisdiction is that the exercise of jurisdiction be reasonable.  Courts are to presume that an otherwise valid exercise of specific jurisdiction is reasonable.  *Ballard*, 65 F.3d at 1500.  To avoid jurisdiction, the defendant must "present a *compelling* case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477 (emphasis in the original).  In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the Court should consider the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's

MEMORANDUM DECISION AND ORDER -11-

interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  None of these factors is dispositive, so the Court must engage in a balancing process.  *Id.* at 1488.

As discussed above, and as contained in the affidavits submitted by Plaintiffs, Defendants purposefully interjected themselves into Idaho by negotiating and securing a Loan committing them to a long-term relationship with ACFI in Idaho.  Defendants argue, however, that jurisdiction is unreasonable because of the difficulty they face litigating in a foreign state.  The Ninth Circuit Court of Appeals has rejected a similar argument made by European defendants required to litigate in California.  *See Dole*, 303 F.3d at 1115.  The court in *Dole* recognized that litigating in California would be expensive and inconvenient for the defendants, but noted that "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country."  *Id.* (citation and internal quotation marks omitted).

With regard to the other factors of reasonableness, Defendants have not alleged a conflict of laws and, in fact, the pertinent Loan documents contain choice of law provisions designating Idaho as the governing state law.  *See id.* at 1116 (considering the impact of a choice-of-law provision on the "efficient resolution" factor).  Additionally, the Court discounts Defendants' argument that Idaho has "little to no interest" in adjudicating this action because the "loan proceeds were used for property that is not located in Idaho" and Sampson is not an Idaho resident nor has he ever been to Idaho.  *Defendants' Memorandum*, p. 9 (Docket No. 6).  Idaho does have an interest in providing a forum for businesses who may suffer economic harm here.

MEMORANDUM DECISION AND ORDER -12-

Regardless of how Defendants used the loan money, if the Loan documents are found unenforceable for any reason, Plaintiffs in Idaho may be injured.

Defendants also assert that "alternative forums abound," but suggest only Massachusetts as an alternative based on the fact that it is "the situs of the property implicated by the promissory note and the home to Sampson." *Defendants' Memorandum*, p. 9 (Docket No. 6). They do not propose that any other state would have personal jurisdiction over the parties in this matter. Thus, it appears to be a choice between an Idaho or a Massachusetts forum—both of which are appropriate forums, and one of which (Idaho) was specifically designated by the parties as an appropriate forum. It is not enough to show that some other forum is more reasonable than Idaho, it must be shown that jurisdiction in Idaho would rise to the level of a due process violation, making it "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (citation and internal quotation marks omitted). This has not been demonstrated or established in the existing record.

In summary, after carefully and thoroughly reviewing the seven pertinent factors and the evidence contained in the record, the Court concludes that Defendants have not met their heavy burden to prove unreasonableness, especially in light of Defendants' express consent to jurisdiction in the Idaho courts.

### v.      Summary

After an extensive review of the record and careful application of the controlling legal authorities, the Court concludes that the aforementioned facts and relationships are sufficient for

MEMORANDUM DECISION AND ORDER -13-

a *prima facie* showing of personal jurisdiction over Defendants.  Accordingly, Defendants'

Motion to Dismiss for lack of jurisdiction is denied.

### III.

### SUBJECT MATTER JURISDICTION

Defendants argue that no justiciable controversy exists in this case and, therefore, the

Court lacks subject matter jurisdiction.  *Defendants' Memorandum*, p. 10 (Docket No. 6).

### A.     Legal Standards for Exercise of Subject Matter Jurisdiction

Because the question of whether federal courts should award declaratory relief is

procedural, Plaintiffs' request for a declaratory judgment is governed by the federal Declaratory

Judgment Act.[8]  *See Golden Eagle Ins. Co. v. Travelers Cos*., 103 F.3d 750, 753 (9th Cir. 1996)

overruled on other grounds by *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998).

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction . . .

any court of the United States . . . may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought."  28

U.S.C. § 2201(a).  "The requirement that a case or controversy exist under the Declaratory

Judgment Act is identical to Article III's constitutional case or controversy requirement."

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citation and internal

---

[8]  Although there was some argument in the earlier briefing suggesting that Idaho law may apply,
in the latest briefs both parties agree that federal law governs the subject matter jurisdiction
issue.  *Defendants' Supp. Brief*, pp. 3-4 (Docket No. 23); *Plaintiffs' Supp. Memorandum*, pp. 6-7
(Docket No. 24).

MEMORANDUM DECISION AND ORDER -14-

quotation marks omitted).  "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject matter jurisdiction." *Id*.

"[T]he appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id*. at 671 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941)).  Applying this standard, the Ninth Circuit Court of Appeals has held that something less than an "actual threat" of litigation is required to meet the "case or controversy" requirement.  *Societe de Conditionnement En Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981).  Instead, courts must focus on whether a declaratory judgment plaintiff has a "reasonable apprehension" that he will be subject to liability.  *Id.; Spokane Indian Tribe v. U.S.*, 972 F.2d 1090, 1092 (9th Cir. 1992).

### B.    This Case Presents an Actual Controversy

Defendants assert that there is "no real dispute about what the terms of the loan agreement mean," but acknowledge that their counsel sent a letter to ACFI describing an issue Defendants have with the manner in which Plaintiffs convinced Defendants to agree to the Loan. *Defendants' Memorandum*, p. 10 (Docket No. 6).  Defendants refer to this issue as merely a "theoretical controversy" not ripe for review.  *Id*. at p. 12.  The demand letter sent by Defendants to ACFI, however, indicates that Defendants considered the issue more than theoretically.  The letter (1) states unequivocally Defendants' "demand that [ACFI] agree to allow Sampson to refinance his debt with [ACFI] without Sampson having to pay the excessive Make Whole Premium referenced in the Loan document," and (2) while expressing an interest in resolving the

MEMORANDUM DECISION AND ORDER -15-

matter "amicably," notifies ACFI that counsel "will not hesitate to pursue our clients' interests in court." *Moore Affidavit*, Ex. 1, p. 2 (Docket No. 14).  This language describes a requested resolution to what Defendants identify as misrepresentations by ACFI and/or its agents regarding the Loan.

For purposes of the instant motions, the Court determines from this letter that a controversy related to the validity and enforceability of the Loan exists—one sufficient enough to induce Defendants to demand refinancing under certain terms and to threaten court action should Plaintiff ACFI be unwilling to comply.  The conflict here is whether Defendants are entitled to *demand* that ACFI refinance the Loan under the conditions outlined in the letter and, thus, whether ACFI should submit to Defendants' request for refinancing under more favorable terms.  Even though Defendants have not breached their payment obligation under the Loan agreement, the Court may still provide declaratory relief.  *See, e.g., Gilbert, Segall and Young v. Bank of Montreal*, 785 F. Supp. 453, 460-62 (S.D.N.Y. 1992) (entertaining declaratory judgment action even though the plaintiff tenant had not vacated the leased premises or otherwise failed to meet his payment obligations under the lease).  The focus is on whether Plaintiffs have a reasonable apprehension that they may be subject to liability.  *See Societe de Conditionnement*, 655 F.2d at 944.  ACFI has an interest in knowing whether the Loan is enforceable and valid under the original terms or if it should consider refinancing.  Additionally, the seven-day deadline to respond to the demand for refinancing or face potential court intervention certainly gives a sense of immediacy to the conflict.

Defendants, however, argue that their demand letter is not sufficient to create an immediate and actual controversy.  *Defendants' Supp. Brief*, p. 10 (Docket No. 23).  One of the

MEMORANDUM DECISION AND ORDER -16-

cases primarily relied on by Defendants, *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp.

2d 823 (E.D. Va. 2001), is instructive on this point.  The court in *Dunn* noted that one cease and

desist letter does not make a case or controversy where it "invites negotiation, but does not

explicitly threaten litigation, and was the defendant's sole act directed at plaintiff."  *Id.* at 827.

Here, however, Defendants' demand letter did threaten litigation and did not merely *invite*

negotiation, but rather "demand[ed] that [Plaintiff ACFI] agree to allow [Defendants] to

refinance [their] debt."  *Moore Affidavit*, Ex. 1 (Docket No. 14).  As explained by the court in

*Dunn*, a cease and desist letter that threatens litigation, under certain circumstances, may be

enough to meet the case or controversy requirement.  *Dunn*, 133 F. Supp. 2d at 827-28.

   Finally, Defendants argue that even if there is a controversy, it lies in tort, not contract,

and therefore is not a proper subject matter for declaratory judgment.  Defendants do not cite any

authority from the Ninth Circuit Court of Appeals to support this position.  Instead, they cite a

1951 Idaho case, *Ennis v. Casey*, 72 Idaho 181 (1951), and a 1982 case from the Texas Court of

Appeals, and *K.M.S. Research Labs., Inc. v. Willingham*, 629 S.W.2d 173 (Tex. App. 1982).

Each case discusses their respective state's declaratory judgment statutes and determines that

tortfeasors should not be allowed to use declaratory actions to choose the forum and time in

which to litigate their potential negligence and liability, especially in personal injury cases.  The

Seventh Circuit Court of Appeals' case cited by Defendants also involved a personal injury

action.  *See Reply Brief*, p. 8 (Docket No. 17) (citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d

1165, 1168 (7th Cir. 1969)).  The court in *Cunningham* suggested that unique policy

considerations exist in negligence/personal injury cases.  A policy of allowing declaratory relief

to determine liability in personal injury cases would "allow a substitute for the traditional

MEMORANDUM DECISION AND ORDER -17-

procedures for adjudicating negligence cases" and contravene the goal to let a "personal injury plaintiff to choose the forum and the time, if at all, to assert his claim."  407 F.2d at 1168-69.

The tort potentially at issue here as a defense and/or counterclaim is that of misrepresentation or fraud and does not involve the same policy considerations relevant to personal injury cases.  In at least one case, the Ninth Circuit Court of Appeals has suggested that contract formation issues, including potential defenses to enforcement of a contract, are an appropriate subject for declaratory judgment actions.  *Pub. Util. Dist. No. 1 of Grays Harbor County v. IDACORP, Inc*., 379 F.3d 641, 652 (9th Cir. 2004) (addressing issue in the context of a motion for leave to amend).  In *IDACORP*, the Ninth Circuit explained that the district court could determine, by way of declaratory judgment, whether the contract was formed under circumstances of unilateral or mutual mistake.  Similarly here, it is appropriate for the Court to address whether a valid, enforceable contract exists between Defendants and Plaintiffs.  *See, e.g., Black Gold Marine, Inc. v. Jackson Marine Co., Inc*., 759 F.2d 466, 469 (5th Cir. 1985) (considering  a declaratory action seeking to declare a contract void on the basis of fraudulent procurement).  Thus, the fact that Defendants' tort-based counterclaims and defenses may be the determinative factor in assessing the enforceability of the Loan does not impact the Court's decision.

For these reasons, the Court concludes that the instant action presents an actual controversy, between parties having adverse legal interests, and with sufficient immediacy to warrant consideration of issuing a declaratory judgment.  Nevertheless, the Court has discretion to decline jurisdiction depending on an application of the factors set forth by the Supreme Court in *Brillhart v. Excess Ins. Co*., 316 U.S. 491 (1942).

MEMORANDUM DECISION AND ORDER -18-

C.        The *Brillhart* Factors Favor Retaining this Action

Despite a conclusion that the case is ripe, the Declaratory Judgment Act requires further analysis in connection with the court's discretion, as described in *Brillhart* and its progeny. *Principal Life*, 394 F.3d at 672.  The *Brillhart* factors are nonexclusive and provide that:  (1) the district court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping, and (3) it should avoid duplicative litigation.  *Id.*  "Essentially, the district court must balance concerns of judicial administration, comity, and fairness to litigants."  *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citation and internal quotation marks omitted).  The Court of Appeals for the Ninth Circuit also has noted the following additional considerations, such as whether the declaratory action (1) will settle all aspects of the controversy; (2) will serve a useful purpose in clarifying the legal relations at issue; (3) is being sought merely for the purposes of procedural fencing; or (4) will result in an entanglement between the federal and state court systems. *Principal Life*, 394 F.3d at 673.  In addition, this Court may consider "the convenience of the parties, and the availability and relevant convenience of other remedies."  *Id.* (citation and internal quotation marks omitted).  There is no presumption in favor of abstention in declaratory judgment actions.  *Dizol*, 133 F.3d at 1225.

The following factors weigh in favor of this Court exercising its discretion to hear this action.  First, no other case has been filed to resolve the issues raised in the instant action, so there are no considerations of duplicative litigation or an entanglement between federal and state court systems.  Second, while this action involves state contract law and potential misrepresentation issues, nothing indicates that these are unique issues that will require the Court

MEMORANDUM DECISION AND ORDER -19-

to determine what Idaho law means.  Finally, deciding this action will serve a useful purpose, clarifying whether ACFI is entitled to enforce the Loan as agreed or whether it should consider allowing refinancing on terms more favorable to Defendants.

Defendants argue that this Court should decline to consider this action because "it is nothing more than forum shopping and a form of 'procedural fencing' by Plaintiffs." *Defendants' Memorandum*, p. 11 (Docket No. 6).  Defendants also point out that because Plaintiffs brought this action Defendants will be forced to litigate in a distant forum the enforceability of loan documents under which they have always performed.  *Id.*  It is not clear from the record before the Court that Plaintiffs filed this action merely to forum shop.  As discussed above, Idaho is designated by the Loan documents as an appropriate forum to determine issues related to the Loan.  Additionally, Plaintiffs apparently were prompted to file this suit to obtain some certainty regarding their ability to enforce the Loan in its current form given that they were faced with a deadline set by Defendants' demand letter.  Moreover, the factor related to forum shopping is usually applied to discourage litigants from filing a federal court declaratory action to see if they might fare better in federal court at the same time a state court action is pending.  *Am Cas. Co. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999).  This type of forum-shopping is not at issue in the instant action.

Balancing all of the factors listed above, the Court determines that it is appropriate in this case to exercise its discretion to consider the request for declaratory judgment.  Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is denied.

MEMORANDUM DECISION AND ORDER -20-

## IV.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction (Docket No. 5) is DENIED.



DATED:  **August 4, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER -21-